2009 OK CIV APP 89

**Arnold JOHNSON and Wynema Johnson, Plaintiffs/Appellees,**

v.

**Merlen SUTTLES and Nancy Suttles, Defendants/Appellants.**

**No. 105,646.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Sept. 29, 2009.

As Corrected Oct. 30, 2009.

Derril W. McGuire, Ardmore, OK, for Plaintiffs/Appellees.

John D. Otey, Otey Law Offices, P.L.L.C., Ardmore, OK, for Defendants/Appellants.

DOUG GABBARD II, Presiding Judge.

¶ 1 Defendants, Merlen and Nancy Suttles, appeal the trial court's order granting Plaintiffs, Arnold and Wynema Johnson, an easement of necessity across Defendants' property to the upper portion of Plaintiffs' land. We affirm as modified herein.

## BACKGROUND

¶ 2 In April 2006, Plaintiffs purchased a 75–acre tract of land located in Carter County, Oklahoma. The tract is located directly east and south of Defendants' property. The southern portion of Plaintiffs' property is accessible from the south by a public road, but the upper portion of the property is difficult to access because a waterway known as Wildhorse Creek flows east and west across the entire tract.

¶ 3 Prior to their purchase, Plaintiffs had leased the land for eight or nine years. They used the upper portion of the property to grow alfalfa, which they baled and sold as animal feed. They reached this part of the property by traveling on a county section line road along the northern perimeter of Defendants' property almost to its northeast corner, and then traveling on an oil well service road in an east/southeasterly direction across Defendants' property to their present property. Plaintiffs often transported baling equipment over the service road.

¶ 4 The service road passing through Defendants' property was built sometime after Defendants purchased their land in 1994. Dehart Company built it for the purpose of servicing oil well sites in the area. In 2001, Dehart paid Defendants a settlement for a release from claims of surface damages. Defendants claim Dehart also agreed to remove the service road once the oil sites had been abandoned.

¶ 5 Defendants were absentee landowners residing outside the state until 2002 when they moved to Velma, Oklahoma. They have been interested in acquiring Plaintiffs' land, and they started locking the gate at the service road entrance shortly after Plaintiffs bought their property in 2006.

¶ 6 Plaintiffs petitioned the trial court to grant them an easement, alleging that access

to their property was "virtually impossible and beyond reasonable" except by means of the service road through Defendants' property. Defendants countered that Plaintiffs could create an alternate means of access by building a low-water crossing across the creek. Defendants also argued that Plaintiffs were not entitled to an easement since the service road was not in existence when Defendants and Plaintiffs' parcels were severed from common ownership.

¶ 7 At the conclusion of the trial, the trial court found that the tracts of both parties had previously been owned by Pat Peck, that unity of title existed despite the fact that each of the parties had purchased their tracts from different immediate grantors, that Plaintiffs had "no other reasonable means of access to their property except across the serviceable road," and that an easement thereon in favor of Plaintiffs would cause Defendants "minimal" inconvenience. The trial court granted Plaintiffs an easement of necessity over the service road, and stated that it was continuing in nature and transferable to subsequent grantors. Defendants appeal.

## STANDARD OF REVIEW

¶ 8 When a trial court grants or denies an easement of necessity, the appellate court will examine the record and affirm unless the trial court's decision is found to be against the clear weight of the evidence or contrary to law or established principles of equity. *Mooney v. Mooney*, 2003 OK 51, ¶ 27, 70 P.3d 872, 878; *DeWitt v. Cavender*, 1994 OK CIV APP 93, ¶ 14, 878 P.2d 1077, 1080.

## DISCUSSION

¶ 9 In *Franks v. Tyler*, 1974 OK CIV APP 55, ¶ 4, 531 P.2d 1067, 1069 (overruled on other grounds by *Childress v. Jordan*, 1980 OK CIV APP 35, 620 P.2d 470), the Oklahoma Court of Civil Appeals explained the theory of common law easements of necessity:

The common law easement by necessity was based upon the implication of a grant of an easement by the owner of the servient estate when necessity of access to the dominant estate required it. Such a theory requires proof of a common grantor at one time of the two properties since the creation of such an easement is based upon the presumed intent of the grantor to convey a way as well as the property.[1]

Generally, to show the existence of a common law easement of necessity, a plaintiff must prove the following elements: (1) unity of title; (2) conveyance of part of the land previously held under unity of title; and (3) a resulting necessity for access to the property at the time of its severance. 28A C.J.S. *Easements* § 93 (1996). Once granted, an easement of necessity continues as long as the need exists. *Id.* at § 96.

¶ 10 Here, Defendants' various propositions of error may be grouped into three arguments challenging the sufficiency of Plaintiffs' proof: *first*, unity of title did not exist because the parties acquired their respective properties from different grantors; *second*, an easement cannot be granted over the service road because the road was not in existence at time of severance; and *third*, an easement is not necessary because Plaintiffs have an alternative means of access to their property.

### 1. Unity of Title

¶ 11 Although Defendants assert there was no unity of title because the parties purchased their respective properties from different grantors, this is not what unity of title means. Instead, the term means "that the two tracts must have been owned at some time in the past by the same person. It is not the law that both tracts must have been owned by the same person at the time of ... conveyance ... to [the owner of the servient estate]." *DeWitt v. Cavender* at ¶ 8, 878 P.2d at 1079 (emphasis and citations omitted); *see also Haas v. Brannon*, 1924 OK 500, 99 Okla. 94, 225 P. 931.

---

**1.** *Franks* also noted that common law easements of necessity are distinguishable from condemnation proceedings for taking private ways of necessity pursuant to 27 O.S.2001 § 6. Private condemnation proceedings do not, for example, require proof of unity of title.

¶ 12 In the present case, Plaintiffs introduced into evidence a 1946 probate decree which recited that Pat Peck owned both properties at his death. In addition, Plaintiffs testified they acquired title to their property in April 2006 from Carmen Hunsucker, who acquired title from David Gayanich, who in turn acquired title from the Peck estate. Defendants purchased their property in 1994 from Geree Kirkpatrick, the widow of Pat Peck, who also acquired her title from the Peck estate. The clear weight of the evidence supports the trial court's finding that the two tracts had been owned at some time in the past by the same party, Pat Peck, and, therefore, had unity of title.

### 2. Existence of necessity at time of severance

¶ 13 Defendants assert that the trial court erred in granting an "implied easement" because the oil well service road was not in use prior to the conveyance which separated the parties' tracts. They rely on *Story v. Hefner*, 1975 OK 115, ¶ 16, 540 P.2d 562, 566, for the proposition that "[t]o establish an easement by implication there must first be a conveyance that divides one ownership into separately owned parts. At the time of the conveyance one part of the property must be being used for the benefit of the other part, creating a quasi-easement."

¶ 14 *Story* and the other cases cited by Defendants concern implied easements, also known as quasi-easements or easements of prior use. Oklahoma courts have clearly distinguished implied easements from easements of necessity. *Mooney v. Mooney*, 2003 OK 51, 70 P.3d 872; *Jones v. Weiss*, 1977 OK 188, 570 P.2d 948; *Keller v. Fitzpatrick*, 1951 OK 49, 204 Okla. 192, 228 P.2d 367; *Gorman v. Overmyer*, 1947 OK 136, 199 Okla. 451, 190 P.2d 447; *DeWitt v. Cavender*, 1994 OK CIV APP 93, 878 P.2d 1077. An implied easement requires *actual use* of one part of the property for the benefit of the other (such as an access road) at the time of

the conveyance separating the property into two tracts. 25 Am.Jur.2d. *Easements and Licenses* § 32 (2004); *see also* Restatement (Third) of Property §§ 2.11 and 2.15 (2000). It presupposes the existence of an *obvious* servitude on the land which a purchaser could not have taken without notice thereof.

¶ 15 In contrast, an easement of necessity merely requires the existence of a need for an easement across a defendant's land at the time of the conveyance which separated the parties' tracts. In other words, a claimant must show that his land, or a portion thereof,[2] was inaccessible and in need of an easement at the time of the severance of the two tracts. *Blackwell v. Mayes County Util. Servs. Auth.*, 1977 OK 190, 571 P.2d 435. Actual use at the time of the severance is not required.

¶ 16 Here, Plaintiffs sought, and were granted, an easement of necessity. The pertinent question is whether Plaintiffs' property needed an easement at the time of the severance of the two tracts. The trial evidence indicated that Wildhorse Creek has been a permanent waterway intersecting Plaintiffs' parcel for over 100 years.[3] Plaintiffs presented evidence that the creek rendered the upper portion of their land inaccessible, except over the service road. Thus, the clear weight of the evidence indicates that if Plaintiffs' land is inaccessible, a matter we discuss below, then it was inaccessible at the time of severance.

### 3. Absolute or Reasonable Necessity

¶ 17 Defendants also assert that Plaintiffs failed to prove a strict or absolute necessity for an easement, citing the following language from *Haas v. Brannon*, 1924 OK 500, ¶ 18, 99 Okla. 94, 225 P. 931, 936:

> A party cannot have a way of necessity through the land of another when the necessary way to the highway can be obtained through his own land, however convenient and useful another way might be.

---

2. The courts have treated partial inaccessibility to land much like total inaccessibility. *See* Michael A. DiSabatino, Annotation, *Way of Necessity Where Only Part of Land is Inaccessible*, 10 A.L.R.4th 500 (1981).

3. Witness Curt Howell testified that Wildhorse Creek existed when his family moved to the area over 100 years previously. Aerial and other photographs indicate that the creek has a depth, width, and length indicating a substantial age.

Defendants assert that Plaintiffs had alternate access to the upper portion of their land by building a bridge over Wildhorse Creek from their own (accessible) property, and, therefore, the trial court erred in granting an easement merely because it was inconvenient or costly for Plaintiffs to do so.

¶ 18 This raises the issue of whether Plaintiffs' need for an easement must be absolute or only reasonable. Using a strict or absolute need standard, a party is not entitled to an easement of necessity unless he has *no access* whatsoever to his land. Using a reasonable need standard, if a claimant has some access, but the location, condition, or nature of the access renders it inadequate, ineffective, difficult, or excessively costly, he may be entitled to an easement of necessity.[4]

¶ 19 On its face, *Haas v. Brannon* appears to require a claimant to show a strict or absolute need for an easement. In fact, in *Story v. Hefner* and *Keller v. Fitzpatrick,* cited above, the Oklahoma Supreme Court held that *implied easements* only require proof of a *reasonable need,* and distinguished the quoted *Haas* language as applying to easements of necessity. Nevertheless, in the last 20 years, the Oklahoma Supreme Court has receded from the 1924 *Haas* language, and has suggested the reasonable need standard also applies to easements of necessity.

¶ 20 Thus, in *Wells v. Webb,* 1989 OK 61, 772 P.2d 400, the plaintiff sought an injunction to prevent an adjoining landowner from blocking his use of part of the adjoining landowner's property that had an unopened section line road. After the plaintiff presented his evidence at trial, the trial court sustained a demurrer. The Oklahoma Supreme Court reversed, finding that the plaintiff had produced sufficient evidence to overcome a demurrer, even though his 40–acre tract was not entirely landlocked and was, apparently, accessible by foot. The Court found that the plaintiff had established a *prima facie* case for an easement of necessity by proving that a portion of his tract was not accessible by automobile or tractor except over the unopened section line. *Wells* demonstrates

that a party may be entitled to an easement of necessity even when he is not entirely landlocked if he has no *reasonable* access to a portion of his property.

■ ¶ 21 The Supreme Court repeated this principle by affirming the granting of an easement of necessity in the case of *Jones v. Weiss,* 1977 OK 188, 570 P.2d 948. In that case, the Supreme Court quoted with approval the following language from the Restatement (First) of Property § 476, Comment (g):

> If no use can be made of land conveyed or retained without the benefit of an easement, it is assumed that the parties intended the easement to be conveyed. This is true not only where it is claimed by the conveyor but also where it is claimed by the conveyee. It is assumed that the parties could not have intended that the land retained by the conveyor should be useless in his hands, though the assumption may not have too firm a foundation in fact. The inference as to intention which is made is influenced largely by considerations of public policy in favor of land utilization.
>
> * * *
>
> If the necessity of an easement is such that without it the land *cannot be effectively used,* nothing less than explicit language in the conveyance negating the creation of the easement will prevent its implication.... (Emphasis added.)

*Id.* at ¶ 8, 570 P.2d at 949. The reasonable necessity rule is entirely consistent with Oklahoma's express policy of land utilization. We conclude that it applies in this State.

■ ¶ 22 Comment (g) of the Restatement stresses that the determination of whether land "cannot be effectively used" requires an examination of all the facts and circumstances of the case:

> If some use may be made, or if an alternative to the easement which might otherwise be implied can be secured, the implication becomes subject to control by other circumstances. Thus, the expense and ef-

---

4. American jurisdictions have been split on whether the rule of strict necessity or reasonable necessity should be applied. *See* Michael DiSa-batino, Annotation, *Way of Necessity Over Another's Land,* 10 A.L.R.4th 447 (1981).

fort necessary to secure a substitute by the conveyor may not be so disproportionate but that it may be assumed he was intended to suffer it, while like expense to the conveyee may warrant the inference that he was not intended to suffer it.

Thus, in determining whether land "cannot be effectively used" without the granting of an easement by necessity, a trial court should examine such factors as the location and condition of the land, the cost of access, the financial resources of the applicant, and the burden that such an easement will have upon the servient estate.

¶23 Although Defendants argued that Plaintiffs could gain access by building a low water crossing or bridge across Wildhorse Creek, the most conservative estimated cost was $25,000 to $30,000, approximately half of what Plaintiffs paid for their tract.[5] Moreover, this amount did not include the cost of building a road to it, or of repairing it when it inevitably washes out due to flooding. The clear weight of the evidence supports the trial court's finding that Plaintiffs did not have reasonably effective access to their land, could not "effectively use" it and were entitled to an easement of necessity.

¶24 Defendants also assert that the placement of the easement, at the site of the oil service road, was unreasonable because the service road would eventually be removed by the oil company. When an objection is raised regarding the location of an easement, an appellate court must examine whether the easement creates an undue burden upon the servient estate. *Jones v. Weiss* at ¶11, 570 P.2d at 950. Burdens on the servient estate include, among other things: (1) decreased property value, (2) increased noise and traffic or interference with the servient owner's peace and enjoyment of the land, and (3) physical damage to the servient estate. *Burkhart v. Jacob,* 1999 OK 11, ¶12, 976 P.2d 1046, 1050.

¶25 The determination of whether the easement would cause an undue burden on the servient estate was a question of fact decided by the trial court. As indicated above, we will not reverse the trial court unless its decision is contrary to the clear weight of the evidence or the law. The record before us does not demonstrate that imposition of the easement at the site of the existing service road will create any undue burden upon Defendants' property.

¶26 However, the fact that the service road may be removed by the oil company is a matter not addressed by the trial court. Oklahoma Corporation Commission Rule 165: 10-3-17 requires removal of oil service roads and restoration of the property by well operators upon abandonment of wells, unless there is a written agreement with the surface owner to leave the surface in some other condition.[6] Here, the trial court did not impose such a requirement upon the Defendants, leaving open the possibility that Plaintiffs' access would eventually be destroyed. Accordingly, we modify the trial court's order to require Defendants to sign a written agreement authorizing the oil company to leave that portion of the service road used by Plaintiffs undisturbed upon its abandonment of oil the well site(s).

¶27 In addition, the lack of a specific metes and bounds description of the road may cause a cloud on Defendants' title. For this reason, we also modify the trial court's order by directing the parties to either agree to a specific metes and bounds description of the road or, if they cannot agree, Plaintiffs shall be required to obtain a survey of said road containing a specific metes and bounds legal description of the road and shall provide it to the trial court within 60 days for inclusion in a modified journal entry filed in the case.

## CONCLUSION

¶28 For all the reasons set forth above, the trial court's judgment is hereby affirmed as modified.

¶29 AFFIRMED AS MODIFIED.

RAPP and FISCHER, JJ., concur.

---

5. The record reflects that Plaintiffs purchased their property in 2006 for $700 per acre, for a total purchase price of $52,500.

6. The promulgation of this rule is authorized by 17 O.S.2001 § 53.2.